IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAY 1 2 2011

David J. Bradley, Clerk of Court

| | |
|---|---|
| DONNA LaRUE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. B-09-139 |
| § | |
| NATIONAL PARK SERVICE OF § | |
| THE DEPARTMENT OF THE § | |
| INTERIOR, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

BE IT REMEMBERED, that on May 12, 2011, the Court considered Defendant National Park Service of the Department of the Interior's ("National Park Service") Motion to Dismiss, Dkt. No. 26; the responses and replies to that motion, Dkt. Nos. 27–30, 33, 36; and the attached exhibits. After considering the record as a whole, the Court concludes that the discretionary function exception to the Federal Tort Claims Act's waiver of sovereign immunity, 28 U.S.C. § 2860(a), bars Plaintiff's premises liability claims and dismisses those claims for lack of subject-matter jurisdiction. The Court finds that it has subject-matter jurisdiction over Plaintiff's claims that a federal employee negligently directed her downrange of an 1841 cannon during an interactive demonstration and that the employee failed to warn her of a hazard over which she eventually tripped as she backed away from the cannon.

I. BACKGROUND

On June 23, 1992, Congress established the Palo Alto Battlefield National Historical Park ("Palo Alto Park") in South Texas. The Palo Alto Battlefield National Historical Park Act of 1991, Pub.L. 102-304 § 3, 106 Stat. 256 (1992); 16 U.S.C.A. § 410nnn-1 (a) (2011). Congress established the Palo Alto Park "[i]n order to preserve for the education, benefit, and inspiration of present and future

generations the nationally significant site of the first battle of the Mexican-American War, and to provide for its interpretation in such manner as to portray the battle and the Mexican-American War and its related political, diplomatic, military and social causes and consequences . . . ." 16 U.S.C.A. § 410nnn-1(a) (2011). Congress directed the Secretary of the Interior to

> manage the historical park in accordance with . . . the National Park System, including the Act of August 25, 1916 (39 Stat. 535; 16 U.S.C. 1 et seq.), and the Act of August 21, 1935 (49 Stat. 666) . . . [and to] protect, manage, and administer the historical park for the purposes of preserving and interpreting the cultural and natural resources of the historical park and providing for the public understanding and appreciation of the historical park in such a manner as to perpetuate these qualities and values for future generations.

16 U.S.C. § 410nnn-2 (2011).

According to undisputed evidence in the record, the Palo Alto Park acquired an authentic 1841 six-pounder cannon for use in living history demonstrations in 2007. *See* Dkt. No. 26 Ex. 2 8:25–9:3. Palo Alto Park conducts living history demonstrations involving this cannon on the first Saturday of each month. *See id.* Volunteer historic reenactors apparently participate in these demonstrations. Under the supervision of a historic weapons safety supervisor such as Rolando Garza ("Garza"), whose deposition testimony is part of the record in this case, the cannon is sometimes fired during these demonstrations.[1] *See* Dkt. No. 26 at 3. Pertinent to this litigation, Garza testified that, during the firing process, an iron bucket approximately the size of a one-gallon paint can is placed downrange of the muzzle in line with or slightly inside of the cannon's right wheel as one faces downrange. *See* Garza Dep. at 29:6–16; 27:21–28:1. During the firing process, a cannoneer dips a sponge rammer – a long rod with a sponge affixed to one end and a

---

[1] Garza testified that the Battle of Palo Alto was "essentially an artillery duel" and that the 1841 six-pounder cannon was selected because the artillery pieces used by the United States in the Battle consisted of 14 such cannons and two 18-pounders. Dkt. No. 26 Ex. 2 77:3–9.

2

tamper affixed to the other – in the bucket, rings out the sponge, and uses it to clean the interior of the cannon's barrel. S*ee id.* at 27:14–18, 11:13–12:2.

Plaintiff Donna LaRue ("LaRue") brought this negligence action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680, in connection with injuries she allegedly sustained while participating in one of these living history demonstrations involving the cannon at the Palo Alto Park on January 5, 2008. *See* Am. Compl. ¶ 3, Aug. 17, 2009, Dkt. No. 8. According to her Amended Complaint, LaRue fell backwards over the iron bucket and broke her hip after being called out of a crowd by agents of the National Park Service to participate in the cannon demonstration by playing the part of the cannoneer using the sponge rammer. *See id.* ¶¶ 3–4. LaRue named the United States of America and the National Park Service of the Department of the Interior as defendants.[2] *See id.* at 1. She pleads the following theories of negligence in her Amended Complaint:

> Liability in this case is based on the negligence of the agents, servants, employees and representatives of the Defendant, the United States of America and its National Park Service of the Department of the Interior in the course and scope of their agency, service, employment and representation in connection with calling Plaintiff, Donna LaRue, out of a crowd at a reenactment of a cannon firing to swab a cannon in one or more of the following regards, among others, which proximately resulted in Plaintiffs fall in which she was injured and damaged on January 5, 2008 by falling backwards over a bucket:
>     a. Creating an unreasonably dangerous condition by the contemporaneous activity of placing a bucket behind her after she was in a position by the contemporaneous activity of placing a bucket behind her after she was in position [sic] by the cannon.
>     b. Failing to make safe the unreasonably dangerous condition by moving the bucket, guarding the bucket, or otherwise. [sic]

---

[2] Throughout this litigation, the parties have captioned the case with a single defendant: the National Park Service. *See, e.g.*, Am. Compl. 1, Dkt No 8. LaRue twice names two defendants on page one of her Amended Complaint.

> c. Failing to warn her of the unreasonably dangerous condition caused by the bucket, placed behind her without her knowledge and/or
> d. Failing to discover that the bucket placed behind her constituted an unreasonably dangerous condition before she fell over it.

*Id.* ¶ 3.

In her deposition, LaRue testified that she volunteered to participate in the cannon demonstration. Dkt. No. 27 Ex. 4 23:9–10. Wade Marcum ("Marcum"), a volunteer historical reenactor who was apparently garbed in a period uniform,[3] stood near her and explained her role. *See id.* at 25:6–19. When LaRue attempted to sponge out the cannon, the sponge separated from the rod and remained in the cannon's barrel. *Id.* at 28:8–12. LaRue testified that Marcum gestured towards her in a way that she interpreted as signaling her to back away from, and apparently downrange of, the cannon. *Id.* at 28:24–25. LaRue alleges that she tripped over the bucket as she was backing away. See *id.*

The scheduling order set November 23, 2010, as the deadline for the parties to complete discovery. Dkt. No. 15 at 1. On January 10, 2011, the National Park Service filed the pending motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Mot. to Dismiss, Dkt. No. 26. The National Park Service argues that the FTCA's discretionary function exception applies to the decision of National Park Service Personnel to place the bucket over which LaRue tripped because the bucket's location was selected for historical accuracy. *See id.* LaRue responds that her claims that Marcum negligently directed her towards the bucket and failed to warn her of the bucket as she approached it do not fall within the discretionary function exception. *See* Dkt. No. 27 at 2.

---

[3] The parties agree that Marcum was a volunteer who must be treated as a federal employee for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). *See* 16 U.S.C. § 18i(b) (2011) ("For the purpose of the tort claim provisions of Title 28, a volunteer under this subchapter shall be considered a Federal employee."); *see also* Dkt. Nos. 33, 36.

## II. DISCUSSION

Under the familiar sovereign immunity doctrine, "the United States, as sovereign, is immune from suits save as it consents to be sued." *Peacock v. United States*, 597 F.3d 654, 659 (5th Cir. 2010) (quoting *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998)) (alterations deleted). By passing the FTCA, "Congress has waived sovereign immunity and has granted consent for the [G]overnment to be sued for acts committed by any 'employee of the Government while acting within the scope of his office or employment.'" *Id.* (quoting ultimately 28 U.S.C. § 1346(b)). Congress delineated several exceptions to the FTCA's waiver of sovereign immunity. *See* 28 U.S.C. § 2860; *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010). The discretionary function exception found in 28 U.S.C. § 2860(a) "withdraws the FTCA's waiver of sovereign immunity in situations in which, although a government employee's conduct may have been actionable under state tort law, those actions were required by, or were within the discretion committed to, that employee under federal statute, regulation, or policy."[4] *Id.* (citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). In its motion to dismiss, the Government argues that LaRue's claims fall within the discretionary function exception because they challenge a decision of the National Parks Service concerning the appropriate location of a bucket in a historically-accurate cannon demonstration *See* Mot. to Dismiss 1. The Court also raises on its own motion its subject-matter jurisdiction over LaRue's FTCA claim against the National Park Service.

---

[4] The entire text of 28 U.S.C. § 1860(a) reads:
> The provisions of this chapter and section 1346(b) of this title shall not apply to [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

5

### A. Proper Defendant

This Court must dismiss LaRue's FTCA claims against Defendant National Park Service of the Department of the Interior because "federal trial and appellate courts have the duty to examine the basis for their subject matter jurisdiction, doing so on their own motion if necessary." *Lewis v. Hunt*, 492 F.3d 565, 568 (5th Cir. 2007) (quoting *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997) and *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 333 n.8 (5th Cir. 2002)). The plaintiff in *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181 (5th Cir. 1988), brought an FTCA action against one defendant: the Occupational Safety and Health Administration (OSHA). Because "the courts have consistently held that an agency or government employee cannot be sued eo nomine under the Federal Tort Claims Act." The *Galvin* court held that the district court should have dismissed the case on its motion for lack of subject-matter jurisdiction. *Id.* at 182 (citations omitted). The *Galvin* court explained:

> It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a Federal Tort Claims Act suit. In a section entitled "United States as defendant," the FTCA vests the district courts with "exclusive jurisdiction of civil actions on claims against the United States for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b) (1982) (emphasis added). The Act goes on to state that any other statute authorizing a federal agency to sue and be sued in its own name does not authorize an action against the agency which is cognizable under the tort claims provision. Instead, a suit against the United States under the FTCA is the exclusive remedy for tort claims arising from the actions of government agencies or employees. 28 U.S.C. § 2679(a) (1982).

*Id.* (alterations in original). For these reasons, LaRue's FTCA claims against Defendant National Parks Service of the Department of the Interior must be dismissed for lack of subject-matter jurisdiction. *See id.*

## B. Legal Standard

The Government moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), which provides for dismissal of an action for lack of subject-matter jurisdiction. It argues that this Court must apply a standard appropriate for a Rule 12(b)(1) motion rather than a motion for summary judgment under Rule 56. *See* Mot. to Dismiss 9–10. "In circumstances where 'the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case' under either Rule 12(b)(6) or Rule 56." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)) (ellipsis in original). When, for example, the Government files a Rule 12(b)(1) motion in an FTCA case arguing that a government employee did not act within the scope of his or her employment, a court should utilize a standard of review appropriate for a Rule 12(b)(6) or Rule 56 motion. *Montez*, 392 F.3d at 150.

Courts have applied a Rule 12(b)(1) standard to review motions to dismiss asserting that an FTCA claim falls within the discretionary function exception when the discretionary function issue and the merits can be separately considered and decided. *See, e.g., Broussard v. United States*, 989 F.2d 171, 177 (5th Cir. 1993) (per curiam) (FTCA action properly dismissed under Rule 12(b)(1) standard when emergency room doctor was not independent contractor and 12(b)(1) dismissal "would allow the plaintiff an opportunity to amend his complaint so as to cure the jurisdictional defect, assuming he is able to do so"); *see also Lively v. United States*, 870 F.2d 296, 300 (5th Cir. 1989) (evidence offered at summary judgment stage "may establish the existence of disputed facts which are material to the plaintiffs' substantive case. They do not, however, establish the existence of any fact which would negate the government's claim that its actions were within the discretionary function exception."); *Ford v. Am. Motors Corp.*, 770 F.2d 465, 468 (5th Cir. 1985) (citing *McClain v. Real Estate Bd. of New Orleans, Inc.*, 583 F.2d 1315 (5th Cir. 1978)) (Rule 12(b)(1) dismissal of FTCA negligence claim appropriate because

7

"merits and the jurisdictional issue were not so intermeshed as to prevent the separate consideration and decision of the jurisdiction question"); *Walding v. United States*, Civ. A. No. SA-08-CA-124, 2009 WL 902423, at *4 (W.D. Tex. Mar. 31, 2009); *cf. also Bank One Tex. v. United States*, 157 F.3d 397, 402–03 (5th Cir. 1998) (motion to dismiss on statute of limitations grounds under federal waiver of sovereign immunity of Quiet Title Act, 28 U.S.C. § 2409(a), properly considered under Rule 12(b)(1) standard). The Court finds that the merits of LaRue's negligence claim and the applicability of the discretionary function exception can be separately determined and therefore applies a Rule 12(b)(1) standard. Because the jurisdictional question is resolved based on undisputed facts, however, the Court's decision would not be altered if it were to analyze the Government's motion to dismiss under a Rule 56 standard.

When a motion to dismiss is filed under Rule 12(b)(1), "[i]t is to be presumed that a cause lies outside a federal court's limited jurisdiction . . . ." *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 461 (5th Cir. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Consequently, the party asserting jurisdiction – in this case LaRue – bears the burden to establish federal subject-matter jurisdiction by a preponderance of the evidence. *See id.; Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010) (citing *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 278 (5th Cir. 2010)); *Castro v. United States*, 608 F.3d 267, 268 (5th Cir. 2010) (en banc, per curiam); *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 747 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008)). "In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez*, 392 F.3d at 149 (citing *Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1947)). "In evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations." *Vantage Trailers*, 567 F.3d at 748 (citing *Williamson*, 645 F.2d at 413).

## C. Discretionary Function Exception

In *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991), the Supreme Court described the two-prong test used to determine whether the discretionary function exception applies to an FTCA claim. *See, e.g.*, *Spotts*, 613 F.3d at 568. A court first asks whether the action or inaction being challenged is discretionary or is controlled by mandatory statutes, regulations, or policies. *See id.*; *Gaubert*, 499 U.S. at 323. If it is, a court must determine whether the challenged exercise of discretion was the kind of action or inaction Congress intended the discretionary function exception to shield. *Spotts*, 613 F.3d at 568 (quoting *Gaubert*, 499 U.S. at 323).

The Government cites a number of cases in which courts have found the discretionary function exception applicable to negligent maintenance and failure-to-warn claims based on the conditions of a premises when that condition was the result of the National Park Service's policy decision to strike a balance between a historical accuracy and safety.[5] LaRue does not dispute that the discretionary

---

[5] *Shansky v. United States*, 164 F.3d 688, 690 (1st Cir. 1999) (applying discretionary function exception to failure-to-warn and condition-of-premises claims arising out of condition of stairwell because condition product of discretionary balancing of historically-accurate aesthetics and safety); *Chantal v. United States*, 104 F.3d 207, 212–213 (8th Cir. 1997) (applying discretionary function exception to condition-of-premises claim arising out of fall on entrance stairs to Gateway Arch because condition of stairs product of focus on preservation of historic significance of the Gateway Arch and its environs); *Miller v. United States*, 642 F. Supp. 2d 437, 443–44 (M.D. Pa. 2009) (applying discretionary function exception to condition-of-premises claim by person who fell into drainage ditch at national battlefield because condition was product of balancing historical accuracy and safety when rehabilitating battlefield); *Brotman v. United States*, 111 F. Supp. 2d 418, 422, 426–27 (S.D.N.Y. 2000) (applying discretionary function exception to failure-to-warn and condition-of-premises claims of plaintiff who fell on stairwell in Statue of Liberty's pedestal because condition product of decision to balance safety and historic accuracy in rehabilitation of the Statue); *Naidu v. United States*, 93 F. Supp. 2d 577, 579, 583 (D.N.J. 2000) (applying discretionary function exception to condition-of-premises claim of plaintiff injured when he fell down stairs of officers' quarters because condition product of decision to focus on the character-defining original construction of historic structure); *Gallardo v. United States*, 29 F. Supp. 2d 572, 573–574 (E.D. Mo. 1998) (applying discretionary function exception to condition-of-premises claim of plaintiff who fell on step-like architectural features complementing the Gateway Arch because condition was product of focus on historic significance of architectural features); *United States v. Cassagnol-Figueroa*, 755 F. Supp. 514, 516, 519–523 (D.P.R. 1991) (applying discretionary function exception to condition-of-premises claim of tour guide who fell over 12-inch wall at fort and then an additional 30 feet because decision to retain fort its original, historic design); *Gabriel v. United States*,

function exception applies to her premises liability claims, which challenge the decision to place the bucket in a historically-accurate location during the reenactment. *See* Pls.' Resp. to Defendant's Reply in Support of its Motion to Dismiss 1, Dkt. No. 29. She contends instead that the discretionary function exception does not apply to her negligent direction and failure-to-warn claims. *See id.*

### 1. *Mandatory Statute, Regulation, or Policy*

The parties do not dispute that no mandatory policy governed the historically accurate placement of the bucket over which LaRue allegedly tripped. *See* Garza Dep. 77:14–16, Dkt. No. 27 Ex. 3 (stating that no mandatory policy governed demonstration). LaRue argues only that Marcum failed to follow a mandatory policy when he allegedly gestured towards her in a way that communicated an instruction to move downrange of the cannon's muzzle. *See* Resp. to Defendant's Reply to Mot. to Dismiss ¶ 3, Dkt. No. 29. The Fifth Circuit has found that a mandatory policy governed a decision when that policy "constrained [the government] officials' discretion such that if the factual predicate to the policy was met, there was no room for choice in making the decision . . . ." *Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007).

A court may infer the existence of a mandatory policy from the testimony of government officials.[6] *See Ashford*, 507 F.3d at 505 (finding existence of mandatory

---

No. 3:06-cv-917-J-32HTS, 2009 WL 22289, at *1, *7 (M.D. Fla. Jan. 2, 2009) (applying discretionary function exception to failure-to-warn and condition-of-premises claims because condition was result of decision to maintain national monument in a historically-accurate way); *Waite v. United States*, No. 1:05-cv-00720, 2007 WL 1434902, at *3 (N.D.N.Y. May 14, 2007) (finding that the National Park Service's interest in preserving the historical accuracy of the Schulyer House in Saratoga Historical National Park was a discretionary function and granting summary judgment to the United States regarding an FTCA suit brought by a visitor who fell over a curb in an unlighted parking lot); *Souchet v. United States*, No. 01 C 2115, 2004 WL 419905, at *7 (N.D. Ill. Feb. 25, 2004) (applying discretionary function exception to claim by person who slipped and fell on ramp with no handrails because decision not to install hand rails was made in order to preserve historic condition of structure).

[6] *But cf. Gaubert*, 499 U.S. 324 (implying in dicta that policy is generally expressed in "internal guidelines," which might be construed as requiring a reduction to writing if read *noscitur a sociis* with "statutes" and "regulations").

prison policy-based on testimony of prison officials). To establish the existence of a mandatory policy, LaRue cites to portions of Garza's deposition in which he testified that cannoneers historically and in reenactments were required to stay at all times behind the plane of the cannon's muzzle because of the danger that the cannon might accidentally discharge. *See* Garza Dep. at 27:8–13 (explaining that "Everybody stays . . . hopefully behind the muzzle."); *id.* at 34:3–37:15; *id.* at 56:8–11 ("Nobody ever steps in front of the barrel as a policy.") Garza proffered much of this testimony in response to questions by LaRue's counsel establishing the aspirational procedure by which the cannon was historically fired and by which reenactments are conducted. *See id.* Garza qualified his claim that everyone involved stays behind the plane of the muzzle with the word "hopefully," seemingly suggesting that this practice is a preference rather than a requirement. *See id.* at 27:11–13. However, read in context, Garza clarified that participants in a reenactment are not allowed to go downrange of the muzzle as a matter of "policy:"

> Q: And then when the – when the stick came out and the sponge stayed back, what happened from there?
> A: That is when, I guess, the procedure stopped and Wade and Danny came in. Danny –
> A: Okay. Wade is --
> A: -- No. 1.
> Q: -- No. 1. Danny is No. 2?
> A. Yes. He came in, I believe. Danny -- while Danny was getting the wormer, Wade got the -- the sponge rammer, the stick out of Ms. LaRue's hand, and they proceeded to try and get the -- the head -- the sponge head out of the gun.
> * * *
> Q: Okay. Were they keeping in their little areas behind the muzzle when they did that, or were they out in front of the gun?
> A: They wouldn't have been, no. We never go straight out in front of the muzzle. Danny would have been still getting at it like that.
> Q: From the left side?
> A: Yeah. And Wade would have been on the right side and all on -- on the outside from what I remember.
> Q: And what?
> A: On the -- on -- nobody -- nobody ever steps directly in front. Just like a regular handgun or any gun, nobody ever steps in front of the barrel as a policy.

Garza Dep. at 55:9–20, 55:23–56:11.

Defendant directs the Court to other portions of Garza's deposition in which he asserts that "no mandatory policy governed the placement of the bucket." Garza Dep. at 77:14–16. This statement does not conflict with his assertion that a policy controlled the movement of Garza, Marcum, and the public during the demonstration on January 5, 2008. Garza's testimony establishes that no policy governed how the stage was set, but mandatory policy circumscribed the actors' movements once they took the stage. The Court thus concludes that a mandatory policy governed Marcum's decision to allegedly direct LaRue downrange of the cannon and that the discretionary function exception does not apply to that claim.

However, LaRue points to no policy, mandatory or otherwise, requiring National Parks Service employees to warn her of the bucket as she backed towards it.[7] *See Shansky*, 164 F.3d at 691–92 (rejecting policy statements from National Parks Service manuals and use of safety precautions found in other parts of historic park at which plaintiff was injured). The Court concludes that Marcum exercised discretion in making the alleged decision whether to warn LaRue of the bucket and proceeds to the second *Gaubert* step on that claim only.

*2. Policy Decision*

"Because the purpose of the exception is to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort,' when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" *Spotts*, 613 F.3d at 568 (quoting *Gaubert*, 499 U.S. at 323) (internal quotation marks omitted). A discretionary function "can include even a low-level operational decision so long as the decision 'requires judgment as to which of a range of permissible courses is the wisest.'"[8] *Coumou v. United States*,

---

[7] LaRue testified in her deposition that Marcum pointed out the bucket to her and explained its purpose in the process of firing a cannon "at some point" before she was injured on January 5, 2008. LaRue Dep. at 27:9–13.

[8] LaRue relies on *Denham v. United States*, 834 F.2d 518 (5th Cir. 1987) and *Hayes v. United States*, 899 F.2d 438 (5th Cir. 1990). In *Denham* and *Hayes*, the Fifth Circuit applied the holding of *Butler v. United States*, 726 F.2d 1057, 1063 (5th Cir. 1984) that "once these [discretionary] decisions were made, the government was no longer exercising a

114 F.3d 64, 65 (5th Cir. 1997) (quoting *Gaubert*, 499 U.S. at 325), *superseding in part*, 170 F.3d. 290. Under the second *Gaubert* prong, "the proper inquiry is not whether [the Government employee] engaged in policy analysis but whether his decision was susceptible to policy analysis." *Spotts*, 613 F.3d at 572 (quoting *Gaubert*, 499 U.S. at 325).

LaRue contends that, if cognizable as negligence under state law, Marcum's alleged failure to warn her of the bucket as she approached it involved no social, political, or economic considerations of the kind protected by the discretionary function exception. Defendant argues that LaRue's premises condition claims and failure-to-warn claim rise and fall together. *See* Garza Dep. 54:6–8 (testifying that bucket was placed in historically-accurate location); *see also* Def.'s Mot. to Dismiss. Dkt. No. 26, Ex. 2. That is, Defendant asks the Court to hold that the discretionary function exception shields any claim that a government employee failed to warn someone of the condition of a premises when that condition resulted from a decision which was itself a discretionary function. *See* Dkt. No. 29 at 4.

Courts have held, however, that the discretionary function exception does not shield all decisions of the National Parks Service not to warn the public of a condition on land for which it has responsibility; it only shields such decisions when they are based on public policy considerations. *See Spotts*, 613 F.3d at 568 (quoting

---

discretionary function and was required to perform the related operational functions with reasonable care." *Denham*, 834 F.2d at 541 (quoting *Butler, supra*); *Hayes*, 899 F.2d at 451 (citing *Denham*). The *Denham* court, for example, concluded that the discretionary function exception did not bar a claim that the Army Corps. of Engineers negligently maintained a swimming area (an "operational function") even though it would have barred a challenge to the initial decision to create that swimming area. *See* 899 F.2d at 520–21. Several courts have stated that *Gaubert* abrogated the discretionary/operational function dichotomy of *Butler* and its progeny. *See, e.g., Autery v. United States*, 992 F.2d 1523, 1527 (11th Cir. 1993) (stating Supreme Court "squarely rejected" *Butler* and *Denham* in *Gaubert*); *Koppie v. Busey*, 832 F. Supp. 1245, 1253 (N.D. Ind. 1992) (stating that *Hayes*'s operational function ruling is incompatible with *Gaubert*). The Fifth Circuit has at least once graced *Denham* with an imprimatur of continued vitality after *Gaubert*. *See Theriot v. United States*, 245 F.3d 388, 396 (5th Cir. 1998) (distinguishing *Denham* but noting that, on different facts, it "would be relevant"). Because *Denham* did not involve an allegation that a government employee negligently failed to warn of a known risk, it is not dispositive in this case, and the Court does not rely on *Denham* in reaching its decision.

*Gaubert*, 499 U.S. at 323). Defendant cites a myriad of cases holding that the discretionary function exception barred claims that the National Parks Service failed to warn the public of dangerous premises conditions or failed to make a dangerous premises condition safe.[9] As the First Circuit explained, these cases recognize that "[a]t the very least, . . . the Park Service may balance aesthetic concerns with those of visitor safety in reaching planning decisions, and that safety concerns will not automatically eclipse all other policy considerations." *Shansky*, 164 F.3d at 693 (citing *Chantal*, 104 F.3d at 212); *see also, e.g., Miller*, 642 F. Supp. 2d at 443–44 (finding Parks Service balanced aesthetic and environmental considerations when deciding not to post warning signs in Gettysburg National Military Park); *Gabriel*, 2009 WL 22289, at *7 (finding undisputed evidence in record that posting warning signs would "detract from the story [the Parks Service was] trying to tell" at San Castillo de San Marcos National Monument). As this language suggests, the discretionary function exception does not shield the National Parks Service from all failure-to-warn claims concerning premises conditions.[10] *See, e.g., Cestonaro v. United States*, 211 F.3d 749, 755 (3d Cir. 2000) (discretionary function exception did not bar claim that National Parks Service failed to warn of hazards in parking lot); *Cope v. Scott*, 45 F.3d 445, 452 (D.C. Cir. 1995) (discretionary function exception did not bar claim that National Parks Service failed to post adequate signs warning of road dangers when Service could not articulate what policy considerations were involved in decision not to post signs); *Summers v. United States*, 905 F.2d 1212, 1215–17 (9th Cir. 1990) (discretionary function exception did not bar claim that National Parks Service failed to post signs at beach barbecue pit warning of hot coals).

---

[9] See supra *note 5*.
[10] After reviewing several failure-to-warn cases applying the discretionary function exception, the First Circuit declared that it "despair[ed] of reconciling all the cases." *Shansky*, 164 F.3d at 693 (collecting cases). At the least, the divergent authority supports the conclusion that the rule is not as absolute or categorical as Defendant would have this Court hold it to be. *See id.*

As the Supreme Court put it in *Gaubert*, however, not every decision involving some form of discretion made by a government employee enjoys the protection of the discretionary function exception:

> There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

499 U.S. at 325 n.7. Thus, in *Crider v. United States*, the Fifth Circuit implicitly found[11] the discretionary function exception inapplicable to a claim that a police officer negligently failed to arrest an intoxicated motorist who subsequently struck and injured the plaintiff. 885 F.2d 294 (5th Cir. 1989). The Fifth Circuit reached the merits in *Crider* and held that the police had no duty to make the arrest under Texas law. *Id.* at 298. Though all of the action in *Crider* took place in the Padre Island National Seashore, the officer's decision apparently involved no balancing of cognizable social, economic, or political considerations. *Cf. Mandel v. United States*, 793 F.2d 964, 966 (8th Cir. 1986) (discretionary function exception did not bar negligence claim by plaintiff who was injured when he dove into swimming area when plaintiff alleged that park ranger recommended swimming at the place where he was injured).

Nowhere in its filings in support of its motion to dismiss does Defendant argue that Marcum's alleged failure to warn LaRue of the bucket was grounded in

---

[11] The discretionary function exception of 28 U.S.C. § 2860(a) "deprive[s] the courts of subject matter jurisdiction and cannot be waived." *In re Supreme Beef*, 468 F.3d 248, 252 (5th Cir. 2006) (en banc) (citing *Hayes v. United States*, 899 F.2d 438, 450–51 (5th Cir. 1990)).

and of itself in considerations of social, political, or economic policy or susceptible to policy analysis. It does not explain how Marcum's alleged failure to warn involved a balancing of factors necessary to accomplish the Palo Alto National Battlefield's statutory mission to "protect, manage, and administer the historical park for the purposes of preserving and interpreting [its] cultural and natural resources . . . and providing for public understanding and appreciation of the historical park in such a manner as to perpetuate these qualities for future generations." 16 U.S.C.A. § 1601nnn-2 (2011). It also does not assert that Marcum needed to balance social, political, or economic factors in order to "conserve the scenery and the natural and historic objects and the wild life and therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C.A. § 1 (2011). Consequently, the Court finds that Defendant has not demonstrated a "rational nexus between the . . . decisions (or non-decisions) and social, economic, or policy considerations . . . ." *Cestonaro*, 211 F.3d at 759; *see also Cope*, 45 F.3d at 451 (government failed to articulate policy reason for decision); *Lanzilotta v. United States*, No. 95-CV-5334(JG), 1998 WL 765143, at *5 (E.D.N.Y. 1998) (holding discretionary function exception did not bar claim that National Parks Service failed to warn of danger created by break between sidewalk and dirt path at Ellis Island because no evidence adduced showing that policy considerations affected decision not to post signs).

The Government has not moved for summary judgment or to dismiss LaRue's claims under Federal Rule of Civil Procedure 12(b)(6). Consequently, the Court expresses no opinion on whether Marcum had a duty to warn LaRue as she allegedly backed towards the bucket or any other aspect of LaRue's negligence causes of action under Texas law. The Government has chosen not to place those questions before the Court.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's Motion to Dismiss, Dkt. No. 26. The Court **ORDERS** all

of Plaintiff Donna LaRue's claims for relief against Defendant National Parks Service **DISMISSED** for lack of subject-matter jurisdiction.

The Court further **ORDERS** all of Plaintiff Donna LaRue's claims against Defendant United States of America **DISMISSED** for lack of subject-matter jurisdiction, except: (1) Plaintiff's claim that she was negligently directed downrange of the cannon and (2) Plaintiff's failure-to-warn claim.

DONE at Brownsville, Texas, on May 12, 2011.

Hilda G. Tagle
United States District Judge